**Dale L. NITZSCHE, Plaintiff,**

v.

**STEIN, INC., et al., Defendants.**

No. 92–CV–995.

United States District Court,
N.D. Ohio, E.D.

Aug. 31, 1992.

Alan S. Belkin, Evelyn Dzurilla Moore, Shapiro, Turoff, Gisser & Belkin, Cleveland, Ohio, for plaintiff.

Keith L. Pryatel, Millisor & Nobil, Cleveland, Ohio, for defendant Stein, Inc.

William I. Fadel, Kathleen M. Sasala, Fadel & Beyer, Cleveland, Ohio, for defendant Local 18 Intern. Union of Operating Engineers.

### ORDER

SAM H. BELL, District Judge.

Currently pending before the court in the above-captioned cause is a motion to strike portions of the complaint's prayer for relief filed by defendant Stein, Inc. (Stein) pursuant to Fed.R.Civ.P. 12(f). Plaintiff Dale L. Nitzsche has not opposed this request.

Plaintiff originally instituted this cause with the filing of a complaint on May 19, 1992 against Stein and defendant International Union of Operating Engineers, Local 18 (the Union). Plaintiff alleges breach of a collective bargaining agreement against Stein and breach of the duty of fair representation against the Union, in violation of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). Specifically, plaintiff claims that Stein discharged him without just cause and that the Union perfunctorily dismissed his grievance prior to arbitration. In his prayer for relief, plaintiff seeks, *inter alia*, reinstatement, back pay, and benefits against Stein and the Union jointly and severally. *Id.* at ¶ (c). In addition, plaintiff requests compensatory and punitive damages, as follows:

> Grant plaintiff judgment against Stein and Local 18, jointly and severally, in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) as compensatory damages, Five Hundred Thousand Dollars ($500,000.00) as punitive damages, and for the costs of this action including plaintiff's reasonable attorney fees.

*Id.* at ¶ (e).

In support of its motion to strike, Stein's argument is threefold. First, Stein contends that plaintiff's request for punitive damages must be stricken in its entirety because such damages are not available in § 301 suits as a matter of law. Second, Stein similarly maintains that any compensatory damages over and above monetary amounts representing back pay and benefits are also unavailable in such suits as a matter of law. Finally, Stein challenges plaintiff's attempt to hold it liable jointly and severally with the Union on the ground that such liability cannot be imposed in hybrid 301 suits as a matter of law. The court will address each of these arguments in turn.

### A. Punitive Damages

Stein's first contention is that punitive damages are not available in § 301 suits as a matter of law. While this is clearly a correct proposition with regard to an employee's suit against his union, the same cannot conclusively be stated as to the employee's claim against his employer for breach of the collective bargaining agreement. The question currently posed is succinctly reflected in the following passage:

> The United States Supreme Court has made it clear that punitive damages may not be awarded against a union for breaches of its duty of fair representation. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). However, with respect to whether punitive damages may be recovered against the employer in a § 301 claim, the law is not so clear. The Sixth Circuit has not addressed the question. District courts are in disagreement. *Compare Brotherhood of Railway Carmen of United States v. Delpro Company*, 579 F.Supp.

1332 (D.C.Del.1984) (no punitive damages recoverable against employer under the Railway Labor Act) *with Brown v. World Airways, Inc.,* 539 F.Supp. 179 (S.D.N.Y.1982) (allowing punitive damages under the Railway Labor Act against an employer).

*Black v. Ryder/P.I.E. Nationwide, Inc.,* 730 F.Supp. 102, 106 (E.D.Tenn.1989), *rev'd on other grounds* 930 F.2d 505 (6th Cir. 1991).[1]

Very little commentary on the question exists at the federal appellate level. A review of the case law reveals that the appellate courts have not discussed in depth the issue of whether punitive damages are available against an employer in a § 301 suit for breach of a collective bargaining agreement, consistently declining to set forth any hard and fast rule of law which might conclusively answer the question either in the affirmative or the negative. Only two appellate opinions which have answered the question in the negative with any degree of certainty: *United Steelworkers of America, AFL–CIO–CLC v. Connors Steel Company,* 855 F.2d 1499, 1510 (11th Cir.1988), *cert. denied* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989), and *Local 127, United Shoe Workers of America, AFL–CIO v. Brooks Shoe Manufacturing Company,* 298 F.2d 277, 278 (3d Cir.1962) (*en banc*). Four other circuit courts have left open the possibility that an award of such damages might be appropriate under exceptional circumstances. *See Merk v. Jewel Food Stores Division of Jewel Companies, Inc.,* 945 F.2d 889, 899 (7th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992) (punitive damages not available in "simple" breach of labor contract cases, *i.e.,* those which are "uncomplicated by evidence of fraud or other tortious misconduct"); *Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO v. Michelson's Food Ser-*

*vices, Inc.,* 545 F.2d 1248, 1254 (9th Cir. 1976) (punitive damages are "not usually" appropriate in breach of labor contract cases); *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 514 F.2d 442, 454 (8th Cir. 1975), *cert. denied* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975) (more than a showing that the employer merely acquiesced in the union's desires would be needed in order to recover punitive damages against the employer); *Holodnak v. Avco Corporation, Avco–Lycoming Division, Stratford Connecticut,* 514 F.2d 285, 291 (2d Cir.1975), *cert. denied* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975) (employee not entitled to punitive damages in § 301 suit against employer where employee made no showing that such an award would deter future violations by the employer).

■ With no specific guidance before us from any binding authority, this court chooses to follow the view that punitive damages are not available against an employer in a § 301 suit for breach of a collective bargaining agreement. The most persuasive reasoning located by this court stems from an opinion in the case *Merk v. Jewel Food Stores, Division of Jewel Companies, Inc.,* 734 F.Supp. 330 (N.D.Ill.1990), *rev'd on other grounds* 945 F.2d 889 (7th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). There, Judge Posner agreed with the employer's contention that punitive damages could not be recovered from it and advanced three convincing reasons for his holding:

> The complaint seeks punitive damages for what the plaintiffs describe as Jewel's "outrageous" conduct in fabricating an oral reopener. I agree with Jewel, and with the majority of courts that have addressed the question, Annot., *Award of Punitive Damages Under § 301 of*

---

**1.** *Foust* held that punitive damages may not be assessed against a union in an action for breach of the duty of fair representation brought under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Inasmuch as cases discussing the Railway Labor Act embody precedent applicable to § 301 of the LMRA for purposes of fair representation suits,

it is believed that the holding enunciated in *Foust* is binding with respect to such § 301 suits. *See United Transportation Union, Local 74 v. Consolidated Rail Corp.,* 881 F.2d 282, 285 n. 4 (6th Cir.1989), *vacated on other grounds* 494 U.S. 1051, 110 S.Ct. 1517, 108 L.Ed.2d 757 (1990).

*Labor Management Relations Act,* 71 A.L.R.Fed. 221 (1985), that punitive damages are not available in a section 301 suit. The Supreme Court has so held with regard to union defendants sued for breach of their duty of fair representation, *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), and it would be unreasonable to distinguish between union and employer defendants in this regard, or between suits for breach of contract and suits for breach of the duty of fair representation:

a. When the Taft–Hartley Act was passed in 1947, punitive damages for breach of contract were virtually, perhaps completely, unknown. Section 301 of the Act does not create a complete remedial scheme. Essentially it just makes collective bargaining agreements actionable, and leaves the incidents of the 301 suits—statute of limitations, other defenses, third-party beneficiaries, parol evidence rule, and all the rest, including remedy—to be worked out by the courts in the exercise of their ill-defined but adequate power to make federal common law. In interpreting other statutes that create a federal right without specifying the details of remedy and procedure, notably 42 U.S.C. § 1983, a statute first passed in 1871, the Supreme Court has looked to the common law at the time of enactment. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). If that approach is taken here, it becomes evident that punitive damages are unavailable in section 301 suits.

b. Punitive damages are of course far more common in tort cases than in contract cases. Breach of the duty of fair representation is a form of breach of fiduciary duty, and is therefore a tort.

Since punitive damages are not available for breach of the duty of fair representation (*Foust*), they surely are not available for a simple breach of contract.

c. Partly in explanation of *Foust,* partly related to the point just made, federal policy aims to promote harmonious labor relations; this is one of the justifications for the mildness of the National Labor Relations Board's remedial powers. 442 U.S. at 52, 99 S.Ct. at 2127; *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 10, 61 S.Ct. 77, 78, 85 L.Ed. 6 (1940). That aim would be deflected if punitive damages were available in section 301 suits. The possibility on the one side of recovering and on the other side of having to pay potentially astronomical damages would place a cloud over labor negotiations, engendering formality and suspicion inimical to the harmonious resolution of labor disputes.

All three reasons I have just given are independent of whether the defendant is a union or an employer. I am convinced therefore that the Supreme Court would not allow punitive damages to be awarded against employers for violating collective bargaining agreements.

*Id.,* 734 F.Supp. at 331–32. For the reasons advanced in *Merk,* it is concluded that punitive damages are unavailable in a § 301 suit against an employer for breach of a collective bargaining agreement. *See also Black, supra,* 730 F.Supp. at 106; *Bower v. Bunker Hill Company,* 675 F.Supp. 1254, 1259–60 (E.D.Wash.1986); *Schultz v. Teledyne, Inc.,* 657 F.Supp. 289, 294 (W.D.Pa.1987); *United Electrical, Radio and Machine Workers of America v. Amcast Industrial Corp.,* 634 F.Supp. 1135, 1143 (S.D.Ohio 1986).[2] The court therefore grants Stein's request to strike

---

**2.** In addition, although the opinion in *Merk* was reversed on appeal, the Seventh Circuit nonetheless agreed with Judge Posner's analysis regarding the availability of punitive damages as applied to the facts before it.

The district court properly concluded that punitive damages should not be awarded in this suit for breach of a collective bargaining agreement. As the district court cogently reasoned, if punitive damages are not available

for breach of the duty of fair representation, *see International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), then they are surely not available for a simple breach of contract. For astronomical damages might threaten the goal of harmonious resolution of labor disputes which is at the core of national labor policy. *Id.,* 945 F.2d at 899.

this portion of plaintiff's prayer for relief in its entirety.

■ The court must also point out that, even were we to follow a contrary view, the allegations of the complaint against Stein are insufficient upon which to premise a prayer for punitive damages. The contrary view observes that "[t]o the extent that such damages are recoverable, an award for same must be based on conduct which is more than merely intentional. Conduct which justifies an award for punitive damages must be 'outrageous or extraordinary.'" *Chrysler Workers Association v. Chrysler Corporation,* 663 F.Supp. 1134, 1141 (N.D. Ohio 1986), *aff'd* 834 F.2d 573 (6th Cir.1987), *cert. denied* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988), citing *Butler, supra,* 514 F.2d at 454. *See also Sheet Metal Workers International Association, Local Union No. 162 v. Jason Manufacturing, Inc.,* 694 F.Supp. 1476, 1479 (E.D.Cal.1987), *aff'd* 900 F.2d 1392 (9th Cir.1990). In the complaint at bar, plaintiff's allegations fall far short of this requirement; indeed, plaintiff fails to even allege that Stein's breach of the collective bargaining agreement was willful or intentional. Thus, even if this court recognized the possibility of imposing punitive damages against Stein as a matter of law, plaintiff offers no basis upon which to grant such relief. Consequently, for this reason also, plaintiff's request for punitive damages must be stricken.[3]

*B. Extracontractual Compensatory Damages*

■ Stein next argues that employees who bring suit under § 301 for breach of a collective bargaining agreement are barred as a matter of law from recovering anything other than back pay and benefits. Stein therefore urges the court to strike that portion of plaintiff's prayer for relief which requests $250,000 in compensatory damages over and above back pay and benefits. Complaint at Prayer for Relief ¶ (e).

Stein's proposition of law reflecting such a blanket prohibition in § 301 cases falls against the great weight of authority, authority which is admittedly not concisely drawn. In this circuit, with regard to § 301 claims against a union, "[d]amages for emotional and mental distress may be awarded for the union's breach of its duty of fair representation." *Farmer v. ARA Services, Inc.,* 660 F.2d 1096, 1107 (6th Cir.1981). The courts which have followed this line of reasoning have cautioned, however, that such damages should only be awarded where the union's conduct is extreme and outrageous. *See, e.g., Baskin v. Hawley,* 807 F.2d 1120, 1133 (2d Cir.1986); *Bloom v. International Brotherhood of Teamsters Local 468,* 752 F.2d 1312, 1315 (9th Cir.1984); *Richardson v. Communications Workers of America,* 443 F.2d 974, 982 (8th Cir.1971); *DeArroyo v. Sindicato De Trabajadores Packinghouse, AFL-CIO,* 425 F.2d 281, 293 (1st Cir.1970), *cert. denied* 400 U.S. 877, 91 S.Ct. 121, 27 L.Ed.2d 115 (1970).

Of more immediate pertinence to the court at this point is the issue of whether such damages are available against the employer in a § 301 suit. The circuit courts have yet to issue any definitive pronouncement in this area. This court's research reveals only one Sixth Circuit case on point, *International Union UAW Local 91 v. Park-Ohio Industries, Inc.,* 876 F.2d 894, (6th Cir.1989) (unpublished, text in WEST-LAW). In that case, the district court had dismissed the plaintiff union's claim against the employer for extracontractual compensatory damages based upon infliction of emotional distress brought under, *inter alia,* § 301. The Sixth Circuit initially noted that the lower court had dismissed this claim because there was no indication that the defendant employer's conduct was "extraordinary or egregious." In upholding this determination, the circuit court stated as follows:

> It is apparent that the district court applied a standard that is consistent with

---

3. The court also emphasizes the fact that plaintiff has submitted no response to the motion to strike. Such silence must be deemed to constitute either an agreement on the part of plaintiff

that punitive damages are not available in § 301 suits, or a decision not to pursue them in this case.

the guiding principle in this context, that mental distress damages are available in breach of contract actions only if serious emotional harm was a particularly likely result. *See* Restatement (Second) of Contracts § 353 (1981).

*Id.* In order to properly determine the efficacy of this holding as applied to the circumstances before us, it is well to further examine the "guiding principle" to which the court made reference. This examination, in turn, necessitates an analysis of the lower court opinion reviewed by the Circuit, *International Union of Automobile Workers v. Park–Ohio Industries,* 687 F.Supp. 338 (N.D.Ohio 1987), *aff'd in part, rev'd in part* 876 F.2d 894 (table).

In determining whether damages for mental distress are available as against an employer in breach of labor contract § 301 actions, the court in *Park–Ohio* initially noted that, inasmuch as § 301 itself offered no guidance, "federal common law" must be examined. *Id.,* 687 F.2d at 342. This examination, in turn, necessitates a review of the law of the state in which the court sits and general common law principles. *Id.,* citing *UAW v. Federal Forge,* 583 F.Supp. 1350, 1356 n. 2 (W.D.Mich.1984) and *UAW v. Yard–Man, Inc.,* 716 F.2d 1476, 1487 (6th Cir.1983), *cert. denied* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).[4]

As in the case at bar, Ohio law guided the court's inquiry in *Park–Ohio.* The court there located only two Ohio cases in which emotional distress damages were held to be recoverable in a breach of contract setting: *Deitsch v. The Music Co.,* 6

Ohio Misc.2d 6, 453 N.E.2d 1302 (Hamilton Cty.Mun.Ct.1983) and *Pullman Co. v. Willett,* 72 Ohio St. 690, 76 N.E. 1131 (1905). Noting that "[b]oth cases involved marriage, and in both cases ordinary contract remedies are inadequate," the court in *Park Ohio* surmised that "Ohio state law is very strict in not allowing compensation for emotional damages which result from a breach of contract." *Id.,* 687 F.Supp. at 342. Therefore, the court concluded, "adopting Ohio law as federal law in this § 301 case would prevent the imposition of emotional damages for breach of contract." *Id.,* 687 F.Supp. at 343.[5]

The court next found that "[l]ooking to other sources does not help the plaintiff's cause." *Id.* As did the Sixth Circuit on appeal, the court cited the Restatement's determination that emotional damages should be available only if the contract breach "is of such a kind that serious emotional injury would likely result." *Id.,* citing Restatement (Second) of Contracts § 353. The court noted that such situations are extremely rare, pertaining to "contracts which inherently involve highly charged emotional situations, such as marriages or deaths." *Id.* This type of contract was not before the court, which therefore, despite declining to rule that emotional damages are never available in a § 301 breach of labor contract case, concluded that such were not available in the case before it.

Reviewing the allegations of the complaint before us, we must reach the same conclusion in the case at bar. Plaintiff

---

**4.** The court in *Yard–Man* described this principle as follows:

> In the absence of controlling federal law principles, however, we may look for guidance to general common law principles, including the substantive law of the state in which the contract arose. These borrowed principles in this context, of course, are "absorbed as federal law" and become the federal common law of labor disputes.

*Id.* Thus, the court in *Park–Ohio,* initially noting that federal law is silent with respect to the question presented, turned to the substantive law of the state in which it sat.

**5.** The court's conclusion was buttressed by the fact that Ohio law,

even when there is an action *in tort* for emotional damages, requires: a) an intention to cause emotional distress, or that the defendant knew or should have known that its actions would cause *serious* emotional distress; and b) conduct so extreme and outrageous that it goes "beyond all possible bounds of decency." *Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (Cuyahoga Cty. Ct.App.1983).

*Id.* (emphasis in original). It would, in other words, be incongruous to conclude that Ohio law might allow for such damages as to an action *in contract.*

does not allege facts which would warrant the imposition of extracontractual damages against Stein; as previously noted, he does not even claim that the alleged breach was willful, intentional, or in bad faith. Nor does plaintiff intimate that those provisions of the collective bargaining agreement upon which the claim is based reflect any contemplation on the part of the parties that such damages would likely result from a breach thereof. Consequently, as did the court in Park–Ohio, this court is constrained to conclude that extracontractual compensatory damages are not available against Stein in this case. For this reason, that portion of plaintiff's prayer for relief requesting same against Stein is stricken.[6]

### C. Joint and Several Liability

■ In the final portion of its motion to strike, Stein argues that plaintiff's attempt to hold it and the Union jointly and severally liable for any damages recovered is improper. In support of this argument, Stein correctly cites the general rule that an award obtained in a 301 hybrid suit must be apportioned between the employer and the union according to fault:

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

*Vaca v. Sipes,* 386 U.S. 171, 197–98, 87 S.Ct. 903, 920–21, 17 L.Ed.2d 842 (1967). *See also Bowen v. United States Postal Service,* 459 U.S. 212, 410, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *Milstead v. International Brotherhood of Teamsters, Local Union No. 957,* 649 F.2d 395, 396 (6th Cir.1981), *cert. denied* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Joint and several liability in such cases, in other words, is not the norm.

An exception to this rule exists in the situation where the employer participates in some manner in the wrongful conduct of the union, or vice versa. Such exceptions are "unusual" and may warrant the imposition of joint and several liability. *Allen v. Allied Plant Maintenance Company of Tennessee, Inc.,* 881 F.2d 291, 298 (6th Cir. 1989). In *Allen,* for instance, the lower court found that the employer and union had colluded to effect a discharge in violation of the collective bargaining agreement and to prevent the employee from receiving an impartial arbitration of his grievance. Under such "unusual" circumstances, according to the Circuit, joint and several liability may be assessed. *Id.,* 881 F.2d at 299. However, where neither the employer nor the union participates in the misconduct of the other, joint and several liability is unwarranted. *Vaca,* 386 U.S. at 197 n. 18, 87 S.Ct. at 920 n. 18.

The allegations of the within complaint do not rise to the level of the unusual case in which the assessment of joint and several liability might be proper. Plaintiff neither claims that Stein participated in the Union's alleged unfair representation or, conversely, that the Union somehow joined in Stein's alleged breach of the collective bargaining agreement. Consequently, based upon the face of the complaint as presented, that portion of plaintiff's prayer demanding joint and several liability is improper under the rule enunciated in *Vaca.* For this reason, the court grants Stein's request to strike this part of the prayer for relief.

For the foregoing reasons, the motion to strike filed by defendant Stein, Inc. (docket no. 9) is granted. Those portions of plaintiff's complaint requesting from Stein puni-

---

**6.** Inasmuch as plaintiff in the case at bar does not allege that he suffered mental or emotional distress from Stein's purported breach, the reasoning of the court in *Park–Ohio* may at first blush appear inapposite. However, the court is unable to ascertain any other type of extracontractual damage which might be sought in this case. Indeed, the Restatement itself is silent with regard to other types of potential consequential loss accompanying a claim for contractual damages based upon lost expectancy interest. *See* Restatement (Second) of Contracts at §§ 344–356. Thus, the court must assume from plaintiff's prayer that he is seeking damages for emotional or mental distress.

tive damages and extracontractual compensatory damages are stricken pursuant to Rule 12(f), as is plaintiff's prayer for joint and several liability.

IT IS SO ORDERED.